UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-149 (NEB)

UNITED STATES OF AMERICA,

Plaintiff,

v.

DEREK GERARD WILLIAMS,
A/K/A "MELIKECHEESEPIZZA,"
A/K/A "KNOTTUPTOANYGOOD,"
A/K/A "JAKE SMITH,"

Defendant.

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Miranda E. Dugi, Assistant United States Attorney, hereby submits its memorandum in support of its position with respect to sentencing of defendant Derek Gerard Williams.

At 22, Williams is young, but his offense conduct belies his youth. He preyed upon very young, vulnerable children to satisfy what is already an extreme appetite for disturbing images of the sexual abuse of children, including children engaged in bestiality. Already steeped in the online subculture dedicated to child exploitation, Williams employed coded language and other methods to conceal his online activity from detection. Given his offense conduct and history, he presents a serious risk of recidivism and has demonstrated that he poses a risk to children in both his physical and online ambits.

For these reasons and those that follow, the United States requests that the Court impose a sentence of at least 360 months' imprisonment, a lifetime term of supervised

release with special conditions, and full restitution. Such a sentence is necessary to deter Williams and protect the public from his future crimes.

## I. Background

[redacted]

[redacted]

[redacted] From at least 2019 until 2021—when he was in his early 20s—Williams used the internet to advertise, produce, distribute, and possess thousands of child pornography files depicting children engaged in a variety of sex acts, including bestiality. To commit the offenses, Williams adopted usernames containing coded language related to child pornography ("cheese pizza") and children engaging in bestiality with dogs ("knotting"). Specifically, Williams

used social media platform LiveMe to advertise links to more than a thousand child pornography files in a forum focused on child exploitation. He also solicited a self-reported 15-year-old victim to produce child pornography for him on LiveMe. He also distributed child pornography to another user via Instagram, again using a username referring to children engaged in bestiality with dogs. Williams also solicited production of child pornography from an identified 14-year-old in Massachusetts via Instagram, and instructed her to produce video of herself masturbating with a hairbrush as described in the Information.

Williams appears to have above-average skill with computers, having previously served as a teaching assistant in a computer class and being familiar with at least one programming language. (PSR ¶ 23). Additionally, he partitioned his hard drive and was running a virtual operating system on it—common methods of compartmentalizing and concealing child pornography activity. Williams's activity might have remained undetected, as he was using a virtual private network (VPN) in an effort to hide his internet activity. (PSR ¶ 7). However, law enforcement was ultimately able to identify his true IP address and location based on two logins that occurred outside the VPN. Subsequent investigation, including multiple search warrants for cloud accounts and Williams's residence, vehicle, and person revealed that Williams advertised, produced, and traded numerous child pornography files on multiple platforms over a matter of years. These files included images of infants and toddlers, sadistic and masochistic conduct, and bestiality.

During a voluntary, non-custodial interview at the time of the search warrant's execution in mid-March 2021, Williams admitted to this conduct and described his sexual

interest in children as focused on children aged 13 and older. Although Williams had multiple victims in this age group, many others were infants and toddlers, and chats reveal a clear sexual interest in extremely young children. For example, as described in the PSR, Williams stated in an Instagram chat that he liked seeing girls in diapers, stating, "Specifically one of my fantasies is when she asks for a change I clean her up but before I put one back on I fuck her." (PSR ¶ 19). Williams went on to state that if he had a daughter, he "would give her sleeping pills at night so she would be in a deep sleep and then I would fill her with my cum and put her diaper back on." *Id.* He also said that he would rape the user's baby, stating, "Of course we would start her off as early as possible. She would know how to suck cock before she knew her first word as it should be." *Id.* During his interview, Williams claimed deep feelings of remorse and having attempted but failed to stop the offense conduct.

## II. Analysis

At a young age, Williams has already demonstrated a willingness [redacted] [redacted], a sexual interest in some extreme forms of child pornography, a facility with navigating its subculture, and an ability to conceal his conduct from those around him and law enforcement. If anything, Williams's age serves as an aggravating factor, and counsels for a lengthy sentence and lifetime term of imprisonment. But for Williams's mistake in logging into certain accounts without his usual VPN, law enforcement may never have found Williams and stopped his abuse of children. Accordingly, the United States recommends that the Court impose a term of imprisonment of at least 360 months, a lifetime term of supervision to follow, and full restitution to Williams's victims.

*a. U.S. Sentencing Guideline Calculations*

The Court employs the U.S. Sentencing Guidelines as "the starting point and the initial benchmark" in imposing its sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Court then must consider the factors enumerated in 18 U.S.C. § 3553(a), in determining whether the applicable guideline range provides for an appropriate sentence. *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009). Where the Court finds that the Sentencing Guidelines adequately account for the offense and relevant circumstances, it "shall impose a sentence of the kind, and within the range" prescribed. 18 U.S.C. § 3553(b)(2).

The PSR and the parties agree that Williams's applicable guideline range is capped by the statutory maximum term of imprisonment of 80 years or 960 months' imprisonment. The parties are also in agreement about two other guideline issues addressed in the PSR addendum, which are briefly addressed below.

The PSR assesses an upward adjustment involving one victim's age that the parties did not contemplate in the plea agreement. (PSR at A.2-A.3). Given the Court's obligation to calculate the applicable guideline range correctly, *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1904 (2018), the government does not contest the PSR's calculation, but maintains a position consistent with its stipulations in the plea agreement. Regardless, there is no effect on the overall guideline range, which both the PSR and the government concur is capped at the statutory maximum term of 80 years' (960 months') imprisonment, based on Williams's total offense level of 43 and a criminal history category of I. (PSR at ¶¶ 74, 81, 113).

However, both parties contest the PSR's grouping calculation, (PSR at A.1-A.3), which—while not material to the overall guideline range—bears addressing. This is so not only because it relates to how the guidelines address the variety of harms Williams caused, but also because that understanding may inform how the Court considers these harms under 18 U.S.C. § 3553(a). The government objects to the grouping of Counts 1-3. Because these acts involve different victims, different methods of communication, and different offense conduct, the parties stipulated in the plea agreement that they should be counted separately. The guidelines support this stipulation. The government provides additional information regarding the parties' reasoning below, though it agrees with the PSR's determination that regardless of if/how grouping applies, the applicable guideline range remains the same.

Although as a general matter, the offenses charged in Counts 1 and 3 may group when they "involv[e] substantially the same harm," USSG §3D1.2, the circumstances here involve numerous distinct victims and methods of advertising and distribution. USSG §3D1.2 comment. (backg'd) ("Counts involving different victims (or societal harms in the case of 'victimless' crimes) are grouped together only as provided in subsection (c) or (d)."). The guidelines note that "[s]pecifically excluded from the operation of" USSG §3D1.2(d)'s grouping subsection include USSG §2G2.1, which applies here to Count 2. Although the remaining counts are among those that may be grouped, USSG §3D1.2 comment. 1, the presence of a count that does not typically group counsels against defaulting to grouping in this case.

With respect to advertising in Count 1, this conduct involved posting thousands of files to multiple fora available to numerous users on domestic and foreign service provider platforms. By contrast, distribution in Count 3 relates to a distinct file distributed directly via internet messaging. Although the counts are potentially groupable as set forth in USSG §3D1.2, the circumstances here weigh against grouping. The counts do not "involve the same victim and the same act or transaction." Even if broadly they involve a variety of efforts to disseminate child pornography, they do not share a common objective, scheme, or plan within the meaning of the guideline. *See* USSG §3D1.2 comment. 4 ("Subsection (b) . . . does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm).") That the guideline excludes rape of the same victim on different days from grouping is instructive here, as well.

Moreover, Count 2 does not embody conduct that is treated as a specific offense characteristic of the calculation of Counts 1 and 2 such that grouping is required. USSG §2G2.2(b)(5) relates to a pattern of activity involving sexual abuse or exploitation of minors—here, just as easily addressed by the numerous other acts of advertising and distribution rather than production of child pornography, as well as prior allegations of sexual abuse that do not constitute relevant conduct. USSG §3D1.2 counsels in favor of grouping where the application of such a provision would essentially constitute double counting. This is not so here. Indeed, if anything, grouping would collapse the variety of

methods and types of harms the defendant caused, failing to meaningfully distinguish them.

Again, regardless, Williams's guideline range remains equivalent to the statutory maximum term of imprisonment.

*b. Recommended Terms and Sentencing Factors under 18 U.S.C. § 3553(a)*

Even at a young age, Williams has already demonstrated an enduring sexual interest in children. [REDACTED] [REDACTED], Williams's sexual appetite for child sexual abuse appears to know no bounds. Indeed, his interest is marked by staggering volumes of extreme content—images of and chats about perpetrating sadism against infants and children involved in bestiality.

Under these circumstances, his relative youth is unquestionably an aggravating factor. Research has consistently shown that a younger offender is significantly more likely to reoffend than an older one. *See* M. Boccaccini, D. Murrie, S. Hawes, A. Simpler & J. Johnson, *Predicting Recidivism With the Personality Assessment Inventory in a Sample of Sex Offenders Screened for Civil Commitment as Sexually Violent Predators*, 22 PSYCHOLOGICAL ASSESSMENT 142, 142-148 (2010); Karl Hanson & Kelly Morton-Bourgon, *The Characteristics of Persistent Sexual Offenders: A Meta-Analysis of Recidivism Studies*, 73 J. OF CONSULTING AND CLINICAL PSYCHOLOGY 1154, 1154-1163 (2005).

Additionally, Williams has proven himself savvier than many other child pornographers—having already identified multiple online platforms frequented by like-

minded individuals, using coded language to communicate his interests, and capitalizing upon technology to conceal his activity from anyone sharing his devices and from law enforcement. Such a defendant poses a much more insidious risk than the average child pornographer, and is also considerably more difficult for a probation officer to supervise in the future.

Accordingly, the government recommends that the Court impose a lengthy sentence—here, at least 360 months' imprisonment and lifetime supervision. [redacted] [redacted], Williams presents an obvious need to protect the public and for deterrence.

Nonetheless, the recommended sentence represents a considerable downward variance from the applicable guideline range, in recognition of Williams's quick acceptance of responsibility, thereby sparing his victims the need to go through trial, as well as his expressions of remorse and desire for treatment.

*c. Supervised Release*

Additionally, the Court should impose special conditions tailored to Williams's offense. The Court has "wide discretion when imposing terms of supervised release within the statutory framework provided by Congress." *United States v. Fields*, 324 F.3d 1025, 1026-27 (8th Cir. 2003). Special conditions of supervised release are appropriate if "reasonably related" to the applicable sentencing factors described in 18 U.S.C. §§ 3583(d)(1), 3553(a), and involve "no greater deprivation of liberty than is reasonably necessary" to achieve the purposes of supervision, 18 U.S.C. § 3582(d)(2). The government requests that the Court make individualized findings in support of these

conditions at sentencing based on Williams's specific characteristics. *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006).

Given the nature of the offense, the Court should require Williams to participate in sex offender treatment programming, and should restrict his access to electronic devices and the internet. Additionally, the special conditions should restrict his access to minors and include an order not to contact any victims of the instant offenses and of the conduct to which he pleaded guilty in the plea agreement (which applies to unidentified and identified victims).

*d. Restitution*

The parties agree that restitution is mandatory in this case. As a condition of his plea agreement, Williams has agreed to pay each victim requesting restitution of no less than $3000 to each victim who makes a restitution request, while acknowledging that a larger payment may be appropriate. He also agreed to enter a stipulation to restitution prior to sentencing.

To date, the government has received 19 restitution requests from Williams's victims, which it has provided to Williams's counsel to facilitate negotiations with victims' counsel. The undersigned has requested information regarding those negotiations from Williams's counsel on multiple occasions, but to date has not received a response. Additionally, the government has received correspondence from at least one victim's counsel stating that they are unable to reach an agreement to restitution. The government will apprise the Court of updated information in advance of sentencing upon receipt from Williams's and victims' counsel. To the extent that Williams refuses to enter the agreed-

upon stipulation to restitution prior to sentencing, the refusal may be relevant to the Court's consideration of multiple §3553(a) factors or even constitute a breach of his plea agreement.

It bears mention that among Williams's victims are children whose abuse was only very recently perpetrated. For example, counsel for victim "Natalie" reported that the defendant who raped her 10-year-old client and recorded the abuse was sentenced to more than 200 years in prison in 2021, in one of the district's longest sentences ever imposed. Williams distributed a video file depicting the rape of the victim via direct message on Instagram in exchange for additional child pornography, revictimizing all the children depicted.

## III. Conclusion

For the foregoing reasons, the United States requests that the Court impose a sentence of at least 360 months' imprisonment, lifetime supervision, and full restitution.

Dated: January 3, 2022

Respectfully Submitted,

CHARLES J. KOVATS, JR.
Acting United States Attorney

*/s/ Miranda E. Dugi*
BY: MIRANDA E. DUGI
Assistant U.S. Attorney
Attorney ID No. 5140546 (NY)